# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RICHARD ANTHONY NEWLAND,              CASE NO. 2:08-cv-472
                                      CRIM. NO. 2:05-cr-111
     Petitioner,                     JUDGE GRAHAM
                                      MAGISTRATE JUDGE KEMP
v.

UNITED STATES OF AMERICA,

     Respondent.

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, has filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ and supplemental response, petitioner's response and reply to the supplemental response, and the exhibits of the parties. Petitioner's motion to amend his affidavit in support of his §2255 petition, Doc. No. 41, is **GRANTED.** For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner be appointed counsel to represent him at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney advised him to proceed to trial, as he would be sentenced the same regardless of whether he pleaded guilty or proceeded to trial. The Magistrate Judge further **RECOMMENDS** that the remainder of petitioner's claims be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

On September 3, 2004, Officer Vass of the Columbus Police went to Newland's restaurant, the R & N Barbeque, to do a "business check": visiting the business and discussing security with the owner. During his conversation with Newland, Officer Vass asked if Newland had a problem with vehicles being left in his parking lot, and pointed to a green Ford Taurus parked in front as an example. Newland responded that the Taurus belonged to him.

After the business check, and following further investigation, Vass discovered that Newland's driver's license had been suspended. A week later, around 11 p.m., Vass was patrolling the area near Newland's restaurant and saw Newland leaving the restaurant with "some type of bag or package in his arms." Vass noticed Newland's Taurus sitting in the parking lot with the trunk open. Vass then observed Newland go to the trunk, shut the trunk, get into the driver's seat without the bag, and drive out of the parking lot.

Knowing Newland's license had been suspended, Vass asked two other officers to initiate a traffic stop. Officers Pappas and Weir pulled Newland over and requested his driver's license. Newland searched for his license, could not find it, and instead provided a Social Security card. While Newland was searching for his license, Pappas observed the vehicle for anything illegal, dangerous, or suspicious. A blue duffel bag placed between Newland and the front-seat passenger caught his attention. Officer Pappas ran a check on Newland's social security number and confirmed that Newland's license was indeed suspended. Pappas then requested that Newland step out of the vehicle. Instead, Newland began to drive away. After a brief car chase, Newland jumped out of his car and ran. Officer Pappas chased him on foot while Officer Weir stayed with the car and its three passengers: an adult woman seated in the front passenger's seat and two minor children of unknown age and gender seated in the rear.

Once Newland was caught, Pappas escorted him back to the vehicle and assisted in taking an inventory of the car's contents. Pappas noticed that the blue duffel bag was missing, and recalled only one moment during the chase when

Newland had not been in his sight; this was during the car chase, when Newland made a right turn at the corner of Joyce Street and Aberdeen Street. Police went back to that corner and found the blue duffel bag there. According to the uncontested finding of the district court, the bag was found in a front yard of a house, to the driver's side of a car on Newland's route fleeing police.

The blue duffel bag contained two loaded guns: a .50-caliber Desert Eagle and an Intertec TEC-9 with a 30-round clip. During the trial, Officer Vass testified that a Desert Eagle is not often seen in the drug trade as it is expensive and unwieldy. Vass testified that a TEC-9 is often seen in the drug trade, and rarely seen used for business or home defense. Vass also testified that other business owners in the area with whom he had talked maintained firearms at their businesses for the purpose of defense.

In the glove compartment of the car, the police found two small baggies of marijuana, in amounts consistent with either personal use or street level sales. Above the driver's side visor, Officer Weir found an envelope containing cash and checks totaling $6,147. In the trunk of the car, the police found a blue backpack containing a large amount of marijuana, Newland's suspended driver's license, and a digital scale. The trunk also held a black canvas bag containing two bags of marijuana, rubber bands, and razor blades. The total amount of marijuana found in the car was 1227.3 grams.

On May 8, 2006, the United States District Court for the Southern District of Ohio conducted a bench trial and, after overruling a motion for acquittal, found Newland guilty of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count One), possession of one or more firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two) and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) (Count Three).

*United States v. Newland,* 243 Fed.Appx. 51, unpublished, 2007 WL 2404512 (6th Cir. August

22, 2007).  On July 13, 2006, petitioner was sentenced to an aggregate term of 108 months imprisonment plus five years supervised release.  Doc. Nos. 23, 27.  Petitioner filed a timely appeal, in which he asserted that the evidence was insufficient to sustain his convictions on Counts Two and Three of the Indictment.  *See United States v. Newland, supra.*  On August 22, 2007, the United States Court of Appeals for the Sixth Circuit affirmed the District Court's judgment.  *Id.*  On April 14, 2008, the United States Supreme Court denied petitioner's petition for a writ of *certiorari.  Newland v. United States*, 128 S.Ct. 1920 (2008).

On May 15, 2008, petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255.  He asserts as follows:

1.  Ineffective Counsel.

1.  Giving erroneous advice about time.
2.   Giving erroneous advice about 2 points acceptance of responsibility.
3.  Failure to investigate witnesses.
4.  Not raising *Franks* violation.
5.  Not raising *Brady* claim and *Jencks* Act.
6.  Not filing speedy trial delay violation.
7.  Not objecting to unfounded allegations on PSI.
8.  Not introducing exculpatory evidence.

2.  *Brady* violation.

Prosecutor withheld exculpatory evidence from grand jury and trial court.

It is the position of the respondent that petitioner's claims are without merit.

## CLAIM ONE

In claim one, petitioner asserts that he did not want a trial, but proceeded to trial

4

only because his attorney told him that he would be sentenced the same regardless of whether he pleaded guilty or proceeded to trial. Petitioner complains that his attorney advised him he would obtain a two point reduction in his recommended sentence under the United States Sentencing Guidelines for acceptance of responsibility even if he were to be found guilty after a trial. He asserts that he was sentenced more harshly as a result of counsel's inaccurate advice:

> [E]ven if the government had offered to drop the third count 922(g) and 924(a) he would have accepted the plea offer assuming counsel would not have gave erroneous advi[c]e about it not making a difference, which the courts know this would have taken 40 - 48 months off of the 108 month sentence a 40% - 45% difference in the amount of time incarcerated.

*Amended Affidavit of Richard Anthony Newland,* Doc. No. 41.

In response to petitioner's allegations, respondent has submitted an affidavit from Attorney G. Gary Tyack, petitioner's defense counsel, indicating in relevant part as follows:

> I was privately retained by Richard Anthony Newland to represent him on his miscellaneous federal charges. Newland had been under investigation by officers of the Columbus division of Police based upon allegations from one or more informants that he was engaging in trafficking in drugs from his restaurant in Columbus, Ohio.
>
> Police observed Newland place a sizable object in the trunk of a motor vehicle. Newland, despite having no operator's license, got behind the wheel of the motor vehicle, and drove it away from his restaurant. Police officers, who knew Newland had no operator's license, pulled Newland over. When it became apparent Newland was going to be arrested and the motor vehicle impounded, Newland fled, driving the vehicle erratically through a nearby neighborhood. He eventually fled the vehicle on foot and was captured. A blue

bag matching a blue bag seen near Newland's feet was found near the route he had driven in fleeing. In the blue bag were large firearms. In the trunk of the vehicle was a significant amount of marijuana, packaged for transport and/or sale.

Because of his past criminal record and because he fled the police, Newland was not a good candidate for a jury trial. The issue for trial was the ability of the government to prove his guilt. I believed that Judge Graham, sitting as the trier of fact, was more likely to objectively view the testimony and enter a verdict of not guilty if the government failed in its proof than a jury from the Southern District of Ohio would. Judge Graham did seriously consider a not guilty verdict, as evidence by his comments from the bench before the lunch recess during trial. Ultimately, however, Judge Graham did enter guilty findings.

Newland was convinced the government could not prove his guilt, despite the fact that he had done the crimes alleged in the indictment. He could not testify at trial without perjuring himself. I feared that if he testified falsely at trial, Judge Graham could and would justifiably increase Newland's sentence of incarceration. Since he did in fact throw the blue bag from the vehicle and possess the items in the trunk, any defense witnesses would either have hurt Newland's case or committed perjury.

Because he had convinced himself his guilt would not be proven, Newland had no interest in plea negotiations which would result in a sentence of years of incarceration. My recollections are that no plea offer was forthcoming which would have resulted in a sentence of less than five years incarceration. Newland expressed no interest in pleading to the plea offer which was made.

*Affidavit of G. Gary Tyack, Exhibit A to Return of Writ.*

Respondent indicates that the government did not convey a formal plea agreement to petitioner, but the terms of any plea would have required petitioner to

plead guilty to Count 1, the possession with intent to distribute marijuana count, in addition to a guilty plea to Count 2, Newland's possession of a firearm in furtherance of a drug trafficking crime. This disposition would have warranted a minimum five year consecutive term of imprisonment.

*Government's Supplement to the Record,* Doc. No. 50.

Prior to the start of trial, the parties indicated that they had been unable to reach a

plea agreement:

> MR. DOMINGUEZ: Your Honor... I discussed with Mr. Tyack my desire to put on the record the fact that he has discussed the government's offer to enter into a plea agreement with Mr. Newland. Obviously, the government does not want you to know the nature of the discussions that they had about it, but the fact that he is aware than an offer was made and that it has been rejected.
>
> ***
>
> MR. TYACK: Your Honor, the offer was that –
>
> COURT: I don't want to know the terms of the offer.
>
> MR. TYACK: All right, fine. I have discussed, fully discussed with Mr. Newland all of his options, including the benefits and detriments of entering a guilty plea and that has all been done before now and has been renewed since nine o'clock this morning.

*Trial Transcript, May 8, 2006*, at 10-11. At sentencing, petitioner stated:

> As for trial, I didn't want to go to trial, but at the recommendation of my lawyer went to trial because he said that whatever the prosecutor offered, the time that I was looking at was still going to be the same.
>
> And I would have liked to have had a pre PSI prior to going to trial. If I would have known about it, I would like for the

prosecutor to allow me to have one.  That's something I just became aware of in the last three or four days.

*Sentencing Transcript, July 13, 2006,* at 14-15.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel.  *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970).  The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir. 1987).  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland,* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  *Strickland,* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Because petitioner must satisfy both prongs of the *Strickland* test to

demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.*, at 697.

> Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58, 106 S.Ct. 366, 88 L.Ed.2d 203. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir.2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir.1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005).

In imposing sentence after trial, the District Court concluded that petitioner's total offense level under the United States Sentencing Guidelines was 20, with a criminal history category of III, corresponding to a recommended sentence on counts one and three of 41 to 51 months incarceration, plus the mandatory consecutive term of 60 months on count two, *see Statement of Reasons*, Doc. No. 28 (filed under seal), and imposed an aggregate term of 108 months. *See* Doc. No. 27. Had petitioner instead pleaded guilty to counts one and two of the indictment, which charged him with possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a)(1), (b)(1)(D), and possession of a firearm in

furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(i), and assuming that the Court reached these same conclusions regarding petitioner's total offense level and criminal history category, and additionally credited petitioner with a three level reduction in his recommended sentence for acceptance of responsibility and timely notifying authorities of his intention to plead guilty, petitioner's recommended sentence then would have been 30-37 months on count one, plus sixty consecutive mandatory months on count two, for a total potential term of 90-97 months. *See United States Sentencing Commission Guidelines Manual, 2005 edition, Sentencing Table*, at 377; *Statement of Reasons (filed under seal)*, Doc. No. 28; *PreSentence Investigation Report*. Under such scenario, it appears that petitioner would be able to establish prejudice if, as he alleges, he wanted to plead guilty, and proceeded to trial based on defense counsel's advice that he would receive the same sentence regardless of whether he proceeded to trial or pleaded guilty. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hill v. Lockhart*, 474 U.S. 52, 59, (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988).

Because petitioner has alleged facts which, if true, may entitle him to relief, and there exists a factual dispute, *see Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007), citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999), the Magistrate Judge **RECOMMENDS** that counsel be appointed on petitioner's behalf to represent him at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney advised him to proceed to trial because he would be sentenced the same regardless of whether he pleaded

guilty or proceeded to trial.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney told him there was no need to call any defense witnesses and did not interview or attempt to contact potential defense witnesses. He contends that Chenee O. Farrow, the mother of his child, would have testified that the marijuana found by police belonged to her, petitioner did not know about the drugs in the car, and did not throw guns or a bag from the car, but fled because he did not have a license and was on probation. *Memorandum in Support*, at 9. Petitioner indicates that Farrow's whereabouts were unknown at the time of trial and has not provided an affidavit from Farrow.. *See Petitioner's Affidavit, Exhibit A to Petition*.

He has attached in support of this claim an affidavit from Wahida Patterson, which indicates as follows:

> I'm writing this letter/statement in regards to the night of Sept. 10, 2004 around 11:00 pm or so Chenee, Leon and Chenee's Jamacian friend came to pick me and my friend up from my house to drop us off at the bar on Hudson, The Knotty Pine and the M & M the two bars are directly across from each other.
>
> On the way dropping us off we dropped Chenee's Jamacian friend off on Dawnlight. He got a backpack from the trunk and told Chenee hold up, he came back and put the bag in the trunk and I got in the front seat and put my purse down beside me and there was also a blue bag. I never seen what was in the bag.
>
> Chenne's male friend told her he would get that after she dropped Richard and them off. He never said what he was talking about getting.

We left and went to the bar. Once we pulled into the parking lot of the bar Chenee asked me and my friend if we wanted to smoke a blunt, and pulled some weed out of the glove compartment and told us that her Jamacian friend had just gave it to her and that he kept her smoking good.

... I teased Chenee about the blue bag on the seat between me and her which is how I remember the bag. I joked with her telling her I liked her Dooney & Burks.

Chenee and Leon left to go pick Richard and them up from Richard's restaurant which is about 1 minute down the street.

Chenee called my cell phone about 10 minutes or so later saying they had got stopped and Richard ran because he didn't have license and he was on probation and that messed up they took her weed and that the police found a blue bag that had a gun in it.

Chenee said she was going to tell them that it was not Richard's bag or gun....

I was willing to go to court to testify but [no] one ever got in contact with me.

*Affidavit of Wahida Patterson, Exhibit BB to Return of Writ.*

The failure to investigate or call a particular witness may constitute ineffective assistance in violation of the Sixth Amendment. *See, e.g., Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting cases). But cases in which courts have found ineffective assistance under those circumstances involved not only a complete failure on the part of counsel to investigate the witness or even explain the failure to investigate, but also a showing that the witness or witnesses whom counsel failed to investigate did, in fact, have favorable testimony to offer. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 356-57 (6th Cir. 2006);

*Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005); *Clinkscale v. Carter*, 375 F.3d at 443. Such are not the circumstances here.

Nothing before this Court supports petitioner's allegation that Chenee Farrow would have offered favorable testimony on petitioner's behalf. Moreover, petitioner acknowledges that her whereabouts were unknown at the time of trial. Additionally, testimony by Wahida Patterson that neither the guns nor the drugs belonged to petitioner would have done little to assist him in view of other evidence submitted at trial. For example, Officer Robert Vas observed petitioner place a package in the trunk of a car petitioner had identified as his own, *Trial Transcript*, at 22-23; petitioner fled when police attempted to stop him for driving with a suspended license; and police found, *inter alia*, a backpack in the trunk of the car containing large amounts of marijuana, digital scales, petitioner's driver's license, and his Sam's membership club card. *Id.*, at 72-74. Although defense counsel argued that the blue bag containing firearms located between petitioner and the front passenger seat was already in the car when petitioner entered the car, and that no evidence linked petitioner to that bag or the firearms in it or established that he used the firearms contained therein in furtherance of a drug trafficking crime, *id.*, at 115-119; 127-129, the District Court rejected these arguments, concluding petitioner had a motive to possess the firearms, that his flight was indicative of guilt, and he was the sole occupant of the vehicle with the physical strength to have thrown the weapons out of the car. *Id.*, at 145-146. Petitioner has failed to establish the ineffective assistance of counsel under *Strickland* based on his attorney's failure to call defense witnesses.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to introduce exculpatory evidence at trial, specifically, a hat, clothing and papers contained in the blue bag with firearms in it that would have established the bag did not belong to him. Additionally, petitioner complains that his attorney failed to introduce bank reports, daily or weekly business logs, and register receipts. *Memorandum in Support*, at 18. Petitioner appears to refer to oral arguments on his direct appeal in support of his claim that the bag contained exculpatory evidence; however, nothing in the record before this Court reflects that any of the items referred to by petitioner were exculpatory for the defense. Petitioner also complains that the prosecutor improperly failed to admit such items into evidence, "and instead relied upon pictures that would not show that these checks and money orders were business proceeds due to the size of the pictures." *Memorandum in Support*, at 19. He alleges that the government "intentionally removed exculpatory evidence proving ownership of bag and hat/clothing." *Id.*, at 20. Nothing in the record, however, supports such allegation. Contents of the bag were disclosed in discovery. *See Exhibit B to Return of Writ*. On cross examination of Officer Weir, defense counsel brought out that the envelope containing cash and checks located on the driver's side visor were consistent with business proceeds. *Id.*, at 86. Petitioner has failed to establish the ineffective assistance of counsel under *Strickland* due to his attorney's failure to introduce any allegedly exculpatory evidence.

Petitioner complains that his attorney failed to object to Officer Weir's testimony that Weir found "some cash and Mr. Newland's driver's license in the front zipper portion of

the backpack," *Trial Transcript*, at 72, since (as brought out on cross examination) Weir

could not recall the ages of the children who were in the car at the time it was stopped, or

whether there were two or three children in the car. *Id*., at 89. This Court is unable to

discern from the record any basis for sustaining an objection to such testimony, and

counsel's decision not to object does not amount to unreasonable performance under

*Strickland*.

Petitioner asserts that he was denied the effective assistance of counsel because his

attorney failed to file a motion to dismiss the charges against him under the Speedy Trial

Act and failed to preserve this issue for appeal. *Memorandum in Support*, at 22. He

complains that the federal grand jury indicted him on April 28, 2005, but he was not

brought to trial until May 8, 2006, more than one year later.

18 U.S.C. §3161(c)(1) provides:

> In any case in which a plea of not guilty is entered, the trial of
> a defendant charged in an information of indictment with the
> commission of an offense shall commence within seventy days
> from the filing date (and making public) of the information or
> indictment, or from the date the defendant has appeared
> before a judicial officer of the court in which such charge is
> pending, whichever date last occurs. If a defendant consents in
> writing to be tried before a magistrate judge on a complaint,
> the trial shall commence within seventy days from the date of
> such consent.

18 U.S.C. §3162 provides the penalties for a violation of §3161(c)(1), as follows:

> If a defendant is not brought to trial within the time limit
> required by section 3161(c) as extended by section 3161(h), the
> information or indictment shall be dismissed on motion of the

defendant. The defendant shall have the burden of proof supporting such motion, but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

Here, the indictment was filed on April 28, 2005, and trial initially scheduled for March 20, 2006. Doc. Nos. 1, 5. On February 16, 2006, the Court granted petitioner's motion to continue the trial date so that defense counsel would have additional time to prepare for an evidentiary hearing on his motion to suppress evidence. *See* Doc. Nos. 9, 11. On April 24, 2006, the Court again granted petitioner's request to continue the trial date, so that defense counsel would have additional time to discuss with petitioner the ramifications of proceeding to trial, in the event that the Court denied his motion to suppress evidence. *See* Doc. No. 15. Trial was held on May 8, 2006.

Therefore, the delay in bringing petitioner to trial was attributable to the defendant and is excluded from the Speedy Trial Act. *See* 18 U.S.C. 3161(h)(1) (D); *White v. United States,* 2008 WL 4745884 (N.D. Ohio October 24, 2008) (the delay in trial caused by the defendant's request for continuance is excluded from the speedy trial clock) (citations omitted). The record fails to reflect a violation of the Speedy Trial Act.

Petitioner nonetheless contends that he was denied his right to a speedy trial under the Sixth Amendment. This Court does not agree. In considering whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must conduct a balancing test weighing the following four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Doggett v. United States*, 505 U.S. 647, 651 (1992).

The length of the delay for speedy trial purposes is measured from the earlier of the date of the indictment or the date of the arrest. *Cain v. Smith,* 686 F.2d 374, 381 (6th Cir. 1982). The delay must be presumptively prejudicial before the court need inquire into the other factors that go into the balance. *Barker v. Wingo*, 407 U.S. at 530. Whether the delay is presumptively prejudicial is determined by the nature and complexity of the crime. *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987). The more serious the crime, the shorter the toleration of delay. *Id.*

Here, the length of time between indictment and trial is one year and ten days. This delay is sufficient to trigger consideration of the remaining factors under *Barker*. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)(postaccusation delay, as it approaches one year, marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry); *see also United States v. Mahan*, 492 F.Supp.2d 822, 828 (S.D. Ohio 2006)(10 ½ month period between indictment and the date that defendant filed his motion to dismiss on speedy trial grounds sufficient to trigger inquiry into remaining *Barker* factors).

Petitioner contends that the second factor, reason for the delay, weighs in his favor, because he was not at fault in causing the delay. Petitioner states that he was serving probation from September 2003, until August 2006, during which time his arrest warrant was pending, and his name and address were known to the government. He has attached a letter from his Attorney at that time, Jerry Lippe, in support of this contention, which indicates in relevant part:

> I, Jerry Lippe, represented Richard Anthony Newland on the charges when they first occurred; however, I was not the trial counsel.
>
> The charges were ultimately dismissed in state court for a future indictment and later picked up by the federal government in 2005.
>
> I was listed as Richard Newland's counsel, but never received notice of an indictment.
>
> From the time the charges were dismissed for a future indictment in 2004 until Richard Newland's arrest in January 2006, I checked regularly as this is routine for me when charges are dismissed for future indictment. Records showed that Mr. Newland had not been indicted nor were there any outstanding warrants.
>
> During this time September 2004 to January 2006 Richard called my office several times to see if he had been indicted. Mr. Newland was concerned about the charges and getting indicted, as he expressed when calling my office checking on the status of the charges.

*Exhibit B to Petition*. However, even assuming that the initial period of eight months 23

days between indictment and arrest was not the fault of petitioner, the Court set a trial date of March 20, 2006, only ten months and twenty days from the date of indictment, and within a time period that would have been insufficient to trigger any inquiry into the remaining *Barker* factors. *See Doggett v. United States, supra.* Further,

> [n]ot all delays are susceptible to equal blame.... Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government.... "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily....

*United States v. Schreane*, 331 F.3d 548, 553-554 (6th Cir. 2003)(citations omitted). Here, petitioner does not suggest, and the record does not reflect, that the initial delay between indictment and his arrest was the result of any bad faith, harassment, or attempt by the government to gain a tactical advantage. *See id.* Moreover, the sole reason that petitioner was not brought to trial within 10 ½ months of the date of his indictment (or by March 20, 2006), was due to his requests for continuance.

Petitioner states that he did not assert his right to a speedy trial when he was unaware of the indictment against him, and the government agrees that he cannot be penalized for not asserting his right to a speedy trial during this time. Again, however, while he was represented by counsel, petitioner thereafter failed to assert his right to a speedy trial, instead requesting two continuances of the trial date to prepare the defense. Therefore, the Court concludes that this factor too, weighs against the petitioner. *See, e.g., United States v. Love*, 125 F.3d 856, unpublished, 1997 WL 618831 (6th Cir. October 6,

1997)(While defendant's failure to assert speedy trial right prior to his arrest cannot be held against him since he was unaware of the indictment against him, his failure to assert his right thereafter may weigh against him.)

The fourth and final factor of the *Barker* balancing test requires the Court to determine the amount of prejudice that the defendant suffered. Prejudice must be assessed in view of the interests a speedy trial is designed to protect: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; 3) to limit the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532. The third interest is the most important. *Id.*

Petitioner states that he "was left worrying ... under a cloud of suspicion and ... a great deal of anxiety" and that his wife and parents were "stressed and concerned." *Memorandum in Support*, at 27-30. He complains that he lost his Busy Barbeque Restaurant because of the pending charges, was forced to file for bankruptcy, unable to make child support payments, and lost his dog breeding and training business. Petitioner further contends that, as a result of the delay in bringing him to trial, he was unable to locate a key defense witness, Chenee Farrow, and prejudiced by the inability of government witnesses to recall the ages or number of children in the car with him on the date of the incident at issue. *See id.*

However, because petitioner was unaware of the indictment against him during the time period before his arrest, it does not appear that any business loss suffered during this

time was due to the adverse impact of pending charges against him. Further, petitioner was released on bond pending his trial and not incarcerated during this time. Additionally, nothing in the record supports petitioner's allegation that Farrow would have offered any exculpatory testimony for the defense, or that petitioner was prejudiced as a result of a lack of memory on the part of prosecution witnesses. *See United States v. DeClue*, 899 F.2d 1465, 1471 (6th Cir. 1990), citing *Payne v. Rees*, 738 F.2d 118, 121 (1984)(Loss of memory insufficient to establish prejudice). The record fails to reflect substantial prejudice. *Id.*, citing *United States v. Marion*, 404 U.S. 307, 324 (1971).

In sum, balancing all of the foregoing factors under *Barker*, this Court is unable to conclude that petitioner was denied his Sixth Amendment right to a speedy trial. *See United States v. DeJesus*, 887 F.2d 114, 116 n.1 (6th Cir. 1989), declining to reach Sixth Amendment speedy trial claim upon resolution of claim under the Speedy Trial Act, noting "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated," quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982).

Petitioner has failed to establish the ineffective assistance of counsel based on his attorney's failure to file a motion to dismiss on speedy trial grounds, or failure to preserve this claim for appeal.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to investigate the scene of his arrest. *See Motion to Amend Affidavit*, Doc. No.

41. Petitioner contends that, had counsel done so, he would have "known that the address where the bag was found 1928 Aberdeen was a 1/4 ways down the street..." and officers would have seen the bag come out of the vehicle. *Id.* Additionally, petitioner contends that further investigation of the area would have shown that, if he headed northbound on Joyce and turned left onto Aberdeen, he never passed 1928 Aberdeen, where the bag was found. *Id.* In support of this claim, petitioner has attached a map of the area from MapQuest. See *Exhibits C, I to Petition.* However, Officer Anthony Pappas testified that petitioner's car traveled northbound on Joyce Avenue from Hudson. *Trial Transcript*, at 41. He initiated the traffic stop at Joyce and Minnesota. *Id.* Petitioner took off, heading northbound on Joyce Avenue. *Id.*, at 44.

> He made a right or an eastbound turn onto Aberdeen. He proceeded eastbound on Aberdeen down to Parkwood. He made a left hand or northbound turn onto Parkwood. He made an immediate left hand turn or westbound back into the alley. He went approximately 200 yards or so, he stopped, he got out and he ran.

*Id.* Officer Smith Weir, who was with Pappas at the time, corroborated this testimony. Id., at 66-67.

> When he exited his vehicle, he ran southbound. I gave foot chase. I chased him southbound between some houses and across the street. He ran around a house and came back out northbound, at which time he was apprehended by Officers Vass and Adkins.

*Id.,* at 45.

> The only time that we lost sight – and what I mean by lost sight

> – the only time that we didn't have direct visual contact with the driver's side window with Mr. Newland's vehicle is when he made the right or eastbound turn from Joyce onto Aberdeen. So, I figured the only time he could have thrown anything from that vehicle out that window had to be when he made that turn. So I immediately went back to that corner, to that intersection to look for the bag.

*Id.*, at 46. Pappas found the blue bag at the corner of Joyce and Aberdeen "just off the street." *Id.*, at 46-47. The map of the location provided by petitioner, *see Exhibit C to Petition*, supports the testimony of Officers Pappas and Weir, although the prosecutor apparently mistakenly stated in closing argument that petitioner made a left hand turn onto Aberdeen. *Id.*, at 132. Petitioner therefore has failed to establish the ineffective assistance of counsel on this basis.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney was unfamiliar with the United States Sentencing Guidelines, and failed to object to assessment of his criminal history points. According to petitioner, he should have been assessed only 5 criminal history points. *Petitioner's Response*, at 15, Doc. No. 46. He complains that his attorney failed to object to the assessment of one criminal history point for his prior conviction on disorderly conduct, in Case Number 13663/96, and the assessment of one criminal history point on driving while under suspension in 2004. *Memorandum in Support*, at 32; *Petitioner's Response*, at 15. However, although the District Court referred to these convictions in discussing petitioner's criminal history, the record does not indicate that petitioner was assessed any criminal history points for these prior convictions. *Sentencing Transcript*, at 11; *PreSentence Investigation Report*, at ¶¶38, 44. The

PreSentence Investigation Report indicates as follows regarding petitioner's 2004 driving while under suspension conviction:

> The defendant was represented by an attorney in this case. The defendant's driver's license was suspended due to the fact he failed to pay child support. Further, the failure to comply counts reflect that the defendant failed to comply with an officer by fleeing....
>
> Due to the fact the behavior was part of the instant offense, no criminal history points will be applied.

*PreSentence Investigation Report*, at ¶44. Further, based on defense counsel's objection to assessment of petitioner's prior criminal history points and the motion of counsel, the District Court departed downward one level in petitioner's criminal history category, to level three. *Sentencing Transcript*, at 9-12. The Court additionally sustained defense counsel's objection to a two level increase in his offense level applied for reckless endangerment. *Sentencing Transcript*, at 4-7.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to the probation officer's description of the facts underlying his conviction on attempted endangering children in the Franklin County Court of Common Pleas on October 26, 2000, *see PreSentence Investigation Report* ¶41, which indicates in relevant part as follows:

> According to the records, on October 17, 2000, Richard Newland called 911 and reported that the victim, Kavon Jones (DOB: 5-25-98), was in need of medical attention after he fell off of a toilet stool. The victim was transported to Children's

24

Hospital where it was discovered that he suffered from a clavicle fracture, THC in his system, and possible brain injuries. It was reported that Newland was the only one home with Kavon Jones when he was injured....

[T]he offender had alleged that the victim had been sick most of the day and had been vomiting and had diarrhea. Newland gave him Pepto Bismol. Newland reported he took the victim to the bathroom and set him on the toilet seat and left the room. When he heard a "thump" and came back to the bathroom, he found Kavon Jones on the floor. Kavon Jones got up and walked a few steps and fell over going totally limp. Newland reported he shook the victim.... Newland also reported splashing water on the victim's face to revive him.

A doctor at Children's Hospital reported to police that the injuries the victim suffered were not consistent with falling from a toilet. The victim had subdural hemorrhages, subarachnoid hemorrhages, parafalcine hemorrhage and large retinal hemorrhages. The doctor reported that the victim received an injury that simultaneously resulted in seizures and bleeding. It was also reported that there was some obstruction of the victim's airway or brain circulation that resulted in the hypoxic ischemic damage. He also suffered swelling to account for compromising the central nervous system. Finally, it was reported that the victim experienced either injuries from shaking or throwing or a blow from a blunt object to the head.

*PreSentence Investigation Report*, at ¶41. Petitioner contends that the foregoing facts are false and were improperly included in his PreSentence Investigation Report because, although he initially was charged with two counts of endangering children and felonious assault, he pleaded no contest solely to attempted endangering children. As a result of the inclusion of these facts in his PreSentence Investigation Report, petitioner complains that he is unable to participate in certain prison programs, including gaining entry to a halfway

house.

However, the record fails to support petitioner's claim that facts surrounding this conviction were improperly included in the PreSentence Investigation Report. For purposes of a defendant's prior criminal history, prior convictions include convictions resulting from a plea of no contest. U.S.S.G. §4A1.2(a)(1).[1] Further, 18 U.S.C. §3661 provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence

See also U.S.S.G. 1B1.4;[2] see also Publication 107, Office of Probation and Pretrial Services Administrative Office of the United States Courts, at III-17-18; III-21(providing that probation office should include in the PreSentence Investigation Report "all known incidents" of prior criminal behavior, including details about the conviction describing the circumstances

---

[1] U.S.S.G. §4A1.2(a)(1) provides:

The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

[2] U.S.S.G. §1B1.4 provides:

In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. §3661.

of serious violations.)

> A court, in ascertaining a perpetrator's proper sentence, may consider any relevant material, including the contents of the PSR, which is "supported by some minimal indicium of reliability beyond mere allegation." *United States v. Dunlap,* 209 F.3d 472, 476 n. 8 (6th Cir.2000) (citation and internal quotes omitted). Evidence germane to sentencing need only satisfy the "preponderance of the evidence" standard, rather than the "beyond a reasonable doubt" measure. *United States v. Gessa,* 57 F.3d 493, 496 (6th Cir.1995); *United States v. Robison,* 904 F.2d 365, 371 (6th Cir.1990). Accordingly, prior criminal behavior by the defendant, which, as in the case *sub judice,* the defendant did not deny during his sentencing proceeding, and/or which was supported by information derived from a reliable source, is relevant to sentencing, even if that prior criminal conduct did not lead to a criminal conviction.

*United States v. Kingsley,* 241 F.3d 828, 833 n.7 (6th Cir. 2001). The cases referred to by petitioner in support of his argument that the probation officer improperly included facts from his arrest report regarding this conviction do not support this claim, as those cases involve the issue of whether underlying facts of a conviction may be used to determine whether or not a prior conviction qualifies as a crime of violence used to enhance a defendant's sentence under the United States Sentencing Guidelines. *See United States v. Armstead,* 467 F.3d 943, 949 (6th Cir. 2006), citing *United States v. Arnold,* 58 F.3d 1117 (6th Cir. 1995); *United States v. Bernal-Aveja,* 414 F.3d 625, 628 (6th Cir. 2005). Petitioner has failed to establish the ineffective assistance of counsel under *Strickland* based on his attorney's failure to make the foregoing objections to the PreSentence Investigation Report.

Petitioner asserts that he was denied the effective assistance of appellate counsel

because appellate counsel, Gordon Hobson, refused to raise on appeal all of the issues requested by petitioner, and refused to file a petition for rehearing *en banc* with the United States Court of Appeals for the Sixth Circuit, or a petition for a writ of *certiorari* with the United States Supreme Court, and failed to advise petitioner of the time limits for filing a petition for rehearing *en banc*. In support of this claim, petitioner refers to letters written between himself and appellate counsel. See *Exhibits K, L, M, O to Petition.*

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)); *see also Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)(outlining factors to consider in assessing a claim of ineffective assistance of appellate counsel). However, "[d]efense counsel has no obligation to raise every issue argued by the defendant or to raise frivolous issues on appeal." *Neeley v. United States*, 2008 WL 2558013 (E.D. Tenn. June 23, 2008). No decision of the United States Supreme Court

> suggests... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also McFarland v. Yukins*, 356 F.3d 668, 710 (6th

Cir. 2004)("the decision of which among possible claims to pursue is ordinarily entrusted to counsel's professional judgment.") Further, a "defendant does not have a constitutional right to counsel in pursuing discretionary review of a conviction." *Stutt v. United States*, 2005 WL 1389181 at *3 (W.D. Michigan June 10, 2005), citing *Wainwright v. Torna*, 455 U.S. 586, 587 (1982); *Ross v. Moffitt*, 417 U.S. 600 (1974). Therefore, petitioner cannot establish the ineffective assistance of counsel based on his attorney's refusal to file a petition for rehearing *en banc*, or a petition for a writ of *certiorari* to the United States Supreme Court. *See id., citing Washpun v. United States*, 2004 WL 2030040 (6th Cir. August 31, 2004); *McNeal v. United States,* 1995 WL 290233 (6th Cir. May 11, 1995). Attorney Hobson notified petitioner in a letter dated August 23, 2007, of the adverse decision of the United States Court of Appeals for the Sixth Circuit rejecting his appeal, and advised him:

> At this point, you have three possible means to pursue the case further. First of all, you could request the entire Court of Appeals to take up your case. This is called an en banc review in my opinion. This would be a waste of time and resources. The court does not grant requests for rehearings unless there is a split on the court or the decision conflicts with another decision of the Sixth Circuit.

> The second option is to file a petition for a writ of certiorari to the United States Supreme Court. In my opinion, there is no reasonable chance that the Supreme Court would consider your case. The decision of the Sixth Circuit is not in conflict with another Court of Appeals and is simply not the kind of case that the Supreme Court would consider. Nevertheless, you have 90 days to request the court to grant certiorari should you elect to go this route.

> Finally, you could go back to the district court and request that

your conviction be set aside because of a constitutional violation.... This action would have to be brought within one year from yesterday. I should say that I have reviewed the transcript and do not believe that Gary Tyack was ineffective in representing you.

To be clear, I do not intend to take any further action on your case. If you decide to pursue further actions and you need some paper work, just let me know.

*Exhibit O to Petition.* Contrary to petitioner's allegation here, the letter is not "misleading."

*See Memorandum in Support*, at 38.

Petitioner asserts that appellate counsel improperly failed to raise on appeal a claim that the District Court abused its discretion by requiring petitioner to participate in a program of alcohol and substance abuse testing, and a mental health assessment or counseling, as directed by his probation officer. *Id.*, at 34-35. However, the PreSentence Investigation Report indicates:

According to the defendant, he consumed alcohol, yet not excessively. He indicated that the use of alcohol has never been a problem to him. He also indicated that he smoked marijuana for approximately one year around 2002 to 2003. He reportedly has never used any other illicit substance; however, he had reported to the clinical psychologist on March 1, 1988 that he had smoked marijuana and used stimulants in a recreational manner. Department of Youth Services records indicated the defendant had a substance abuse problem.

The defendant indicated he attended Narcotics Anonymous and Alcoholic's Anonymous voluntarily when he served his term of imprisonment.

*PreSentence Investigation Report*, at ¶¶80, 81.

U.S.S.G. §5D1.3(d) provides that the following special conditions of supervised release are recommended in the circumstances described and may otherwise be appropriate:

> (4) If the Court has reason to believe that the defendant is an abuser of narcotics, other controlled substances, or alcohol -- a condition requiring the defendant to participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.

> (5) If the court has reason to believe that the defendant is in need of psychological or psychiatric treatment – a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office.

The record does not reflect that a claim that the District Court abused its discretion in requiring the special conditions of supervised release would have met with success on appeal, particularly since the issue would have been reviewed on appeal for plain error only, due to petitioner's failure to object:

> [A]n appellate bench scrutinizes a sentencing court's imposition of special conditions of supervised release for abuse of discretion. *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir.1997). On "abuse of discretion" review, "where a condition of supervised release is reasonably related to the dual goals of probation, [namely] the rehabilitation of the defendant and the protection of the public, it must be upheld." *Id.* ( *quoting United States v. Bortels,* 962 F.2d 558, 560 (6th Cir.1992)). The rigorous "abuse of discretion" standard permits reversal of a district court's directive only in comparatively extreme circumstances.FN12

FN12. "Generally, an abuse of discretion is evident 'when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.' " *Graham-Humphreys v. Memphis Brooks Museum of Art,* 209 F.3d 552, 560 (6th Cir.2000) (brackets omitted) ( *quoting Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995)). *See also Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996) ("Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.") (citation omitted).

Moreover, when, as in the case *instanter,* the defendant *neglected to preserve,* in the trial court, proper objection(s) to those special conditions, and/or to allege any deficiency in the lower court's supporting findings, an appellate court examines those belatedly-faulted special conditions and affiliated findings pursuant to the *heightened* "plain error" measure. *See* Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 733-37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.,* obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998) (citations omitted), *cert. denied,* 526 U.S. 1030, 119 S.Ct. 1278, 143 L.Ed.2d 371 (1999). *See also United States v. Hayes,* 171 F.3d 389, 391-92 (6th Cir.1999) (explaining that the reviewing court's exercise of power to notice and correct procedurally forfeited plain errors which have adversely affected the appellant's substantial rights is entirely discretionary).

"The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," including its rationale for mandating special conditions of supervised release. 18 U.S.C. § 3553(c); *United States v. Berridge,* 74 F.3d 113, 118-19 (6th Cir.1996). Nevertheless, a sentencing court's failure to expressly explain its reason(s) for exacting a particular special condition of supervised release will be deemed *harmless error* if the supporting reasons are evident on

the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety. *Ritter,* 118 F.3d at 504; *Berridge,* 74 F.3d at 118-19.

General factors material to the trial court's determination of an appropriate criminal sentence include:

(1) *the nature and circumstances of the offense* **and** *the* **history and characteristics of the defendant;**

(2) the need for the sentence imposed-

(A) *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*

(B) *to afford adequate deterrence to criminal conduct;*

(C) *to protect the public from further crimes of the defendant;* and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a). (Emphases added).

Additionally, Congress has directed that any special (that is, non-mandatory) condition of supervised release must satisfy three requirements:

The court may order, as a further condition of supervised release, to the extent that such condition-

(1) is reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) [quoted above];

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D) [quoted above]; and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a);
>
> ... any other condition it considers to be appropriate.
>
> 18 U.S.C. § 3583(d).

*United States v. Kingsley, supra*, 241 F.3d at 835-837. Here, imposition of sentence requiring petitioner to participate in alcohol or substance abuse counseling, and to obtain a mental health assessment or counsel, as directed by his probation officer, relates directly to his rehabilitation and deterrence of future criminal activity, particularly in view of the nature of his convictions, a prior history indicating mental health issues, and his prior record, which includes prior drug related convictions. *See PreSentence Investigation Report*, at ¶¶ 35-38; 41-43. Petitioner has failed to establish the ineffective assistance of counsel based on his attorney's failure to raise an issue regarding the special conditions of supervised release on appeal.

Petitioner does not point to any potentially meritorious issues that should have been raised on appeal but were not. The record fails to reflect that petitioner was denied the effective assistance of appellate counsel.

## PROSECUTORIAL MISCONDUCT

Petitioner asserts that he was denied a fair trial because the prosecutor mislead and failed to disclose exculpatory information to the grand jury, specifically, the fact that there

were other occupants in the vehicle when it was stopped. Petitioner further contends that police omitted this exculpatory information from the arrest report. *Memorandum in Support*, at 14.

This claim should have been raised on direct appeal, but was not. Therefore, petitioner must show cause why he did not previously object and "actual prejudice" resulting from the error. *Napier v. United States*, 159 F.3d 956, 961 (6th Cir. 1998), citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Petitioner has failed to establish cause and actual prejudice. The record reflects that his claim of prosecutorial misconduct lacks merit.

As noted by the respondent, the Assistant United States Attorney has no duty to disclose exculpatory information to the grand jury. *United States v. Adamo*, 742 F.2d 927, 936 (6th Cir. 1984). The cases referred to by petitioner in support of this claim, *see Petitioner's Response*, at 7-8, do not support his position. In *United States v. Williams*, 504 U.S. 36, 46 (1992), the United States Supreme Court reversed the District Court's decision dismissing an otherwise valid indictment on the ground that the government failed to disclose to the grand jury "'substantial exculpatory evidence' in its possession." *Id.*, at 38. The Supreme Court noted that a federal court may dismiss an indictment based on misconduct that "amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" *id.*, at 47, quoting *United States v. Mechanik,* 475 U.S. 66, 74 (1986), *also citing Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). The record fails

to reflect such circumstances here.[3] Further, as noted by respondent, the fact that other passengers were present in the vehicle was brought out at trial. *Trial Transcript*, at 57-58; 69-70.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner be appointed counsel to represent him at an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his attorney advised him to proceed to trial, as he would be sentenced the same regardless of whether he pleaded guilty or proceeded to trial. The Magistrate Judge further **RECOMMENDS** that the remainder of petitioner's claims be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made,

---

[3] The Supreme Court noted some examples of such rules as follows:

Rule 6 of the Federal Rules of Criminal Procedure contains a number of such rules, providing, for example, that "no person other than the jurors may be present while the grand jury is deliberating or voting," Rule 6(d), and placing strict controls on disclosure of "matters occurring before the grand jury," Rule 6(e); *see generally United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). Additional standards of behavior for prosecutors (and others) are set forth in the United States Code. See 18 U.S.C. §§ 6002, 6003 (setting forth procedures for granting a witness immunity from prosecution); § 1623 (criminalizing false declarations before grand jury); § 2515 (prohibiting grand jury use of unlawfully intercepted wire or oral communications); § 1622 (criminalizing subornation of perjury).

*Id.*, at 46, n.6.

together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge