**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RICHARD ANTHONY NEWLAND,**

      **Petitioner,**                          **CASE NO. 2:08-CV-472**
                                            **CRIM. NO. 2:05-CR-111**
**v.**                                   **JUDGE GRAHAM**
                                            **MAGISTRATE JUDGE KEMP**

**UNITED STATES OF AMERICA,**

      **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

On June 29, 2010, this Court conducted an evidentiary hearing on petitioner's sole remaining habeas corpus claim, in which he asserts that he was denied the effective assistance of counsel because his attorney advised him to proceed to trial, because he would be sentenced the same regardless of whether he proceeded to trial or pleaded guilty. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED** on petitioner's claim, that his sentence be **VACATED**, and that petitioner be offered the opportunity to plead guilty to Counts One and Two of the Indictment within thirty (30) days.

### I.  FACTS and PROCEDURAL HISTORY

The facts and procedural history of this case are detailed in this Court's *Report and Recommendation,* March 17, 2010, Doc. No. 52.  To summarize briefly, after a trial to the bench on May 8, 2006, petitioner was convicted on possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(D) (Count One of the Indictment), possession of one or more firearms in furtherance of a drug-trafficking crime, in violation

of 18 U.S.C. §924(c)(1)(A)(i) (Count Two of the Indictment), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1); 924(a) (Count Three of the Indictment) . On July 13, 2006, the District Court sentenced petitioner to an aggregate term of 108 months imprisonment plus five years supervised release. Doc. Nos. 23, 27. Petitioner filed a timely appeal in which he asserted that the evidence was insufficient to sustain his convictions on Counts Two and Three of the Indictment. *United States v. Newland,* 243 Fed.Appx. 51, unpublished, 2007 WL 2404512 (6th Cir. August 22, 2007). On August 22, 2007, the United States Court of Appeals for the Sixth Circuit affirmed the District Court's judgment. *Id.* On April 14, 2008, the United States Supreme Court denied petitioner's petition for a writ of *certiorari. Newland v. United States*, 128 S.Ct. 1920 (2008).

On May 15, 2008, petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. On April 16, 2010, the Court dismissed all of petitioner's claims with the exception of his claim that he was denied the effective assistance of counsel because his attorney improperly advised him to proceed to trial, because the sentencing ramifications would not differ significantly regardless of whether he proceeded to trial or entered a guilty plea. The Court appointed counsel on petitioner's behalf to represent him at a June 29, 2010, evidentiary hearing on this claim.

## II. PROCEEDINGS PRIOR TO THE HEARING

Petitioner alleges that he wanted to plead guilty, but proceeded to trial because his attorney told him that his sentence would be the same regardless of whether he pleaded guilty or proceeded to trial. According to petitioner, his attorney advised him he would

2

obtain a two point reduction in his recommended sentence under the United States Sentencing Guidelines for acceptance of responsibility regardless of whether he were to be found guilty after a trial. He asserts that he was sentenced more harshly as a result of counsel's inaccurate advice:

> [E]ven if the government had offered to drop the third count 922(g) and 924(a) he would have accepted the plea offer assuming counsel would not have gave erroneous advi[c]e about it not making a difference, which the courts know this would have taken 40 - 48 months off of the 108 month sentence a 40% - 45% difference in the amount of time incarcerated.

*Amended Affidavit of Richard Anthony Newland,* Doc. No. 41.

Respondent submitted an affidavit from petitioner's defense counsel, Attorney G. Gary Tyack,[1] which indicates in relevant part as follows:

> I was privately retained by Richard Anthony Newland to represent him on his miscellaneous federal charges. Newland had been under investigation by officers of the Columbus division of Police based upon allegations from one or more informants that he was engaging in trafficking in drugs from his restaurant in Columbus, Ohio.
>
> Police observed Newland place a sizable object in the trunk of a motor vehicle. Newland, despite having no operator's license, got behind the wheel of the motor vehicle, and drove it away from his restaurant. Police officers, who knew Newland had no operator's license, pulled Newland over. When it became apparent Newland was going to be arrested and the motor vehicle impounded, Newland fled, driving the vehicle erratically through a nearby neighborhood. He

---

[1] Judge Tyack is currently serving on the Ohio Court of Appeals, and additionally had done so prior to representing petitioner in this case. *Transcript, Evidentiary Hearing*, at 26-27. However, because he was in private practice during the time period at issue here, this Court will refer to him as Attorney Tyack.

eventually fled the vehicle on foot and was captured.  A blue bag matching a blue bag seen near Newland's feet was found near the route he had driven in fleeing.  In the blue bag were large firearms.  In the trunk of the vehicle was a significant amount of marijuana, packaged for transport and/or sale.

Because of his past criminal record and because he fled the police, Newland was not a good candidate for a jury trial.  The issue for trial was the ability of the government to prove his guilt.  I believed that Judge Graham, sitting as the trier of fact, was more likely to objectively view the testimony and enter a verdict of not guilty if the government failed in its proof than a jury from the Southern District of Ohio would.  Judge Graham did seriously consider a not guilty verdict, as evidence by his comments from the bench before the lunch recess during trial.  Ultimately, however, Judge Graham did enter guilty findings.

Newland was convinced the government could not prove his guilt, despite the fact that he had done the crimes alleged in the indictment.  He could not testify at trial without perjuring himself.  I feared that if he testified falsely at trial, Judge Graham could and would justifiably increase Newland's sentence of incarceration.  Since he did in fact throw the blue bag from the vehicle and possess the items in the trunk, any defense witnesses would either have hurt Newland's case or committed perjury.

Because he had convinced himself his guilt would not be proven, Newland had no interest in plea negotiations which would result in a sentence of years of incarceration.  My recollections are that no plea offer was forthcoming which would have resulted in a sentence of less than five years incarceration.  Newland expressed no interest in pleading to the plea offer which was made.

*Affidavit of G. Gary Tyack, Exhibit A to Return of Writ.*

Respondent further indicated that the government did not convey any formal plea agreement to petitioner.  The terms of any plea offer in this case would have required

4

petitioner to

> plead guilty to Count 1, the possession with intent to distribute marijuana count, in addition to a guilty plea to Count 2, Newland's possession of a firearm in furtherance of a drug trafficking crime.  This disposition would have warranted a minimum five year consecutive term of imprisonment.

*Government's Supplement to the Record,* Doc. No. 50.

The trial transcript reflects the parties indicated, prior to the start of trial, that they had been unable to reach a plea agreement:

> MR. DOMINGUEZ: Your Honor... I discussed with Mr. Tyack my desire to put on the record the fact that he has discussed the government's offer to enter into a plea agreement with Mr. Newland.  Obviously, the government does not want you to know the nature of the discussions that they had about it, but the fact that he is aware than an offer was made and that it has been rejected.
>
> ***
>
> MR. TYACK: Your Honor, the offer was that –
>
> COURT: I don't want to know the terms of the offer.
>
> MR. TYACK: All right, fine.  I have discussed, fully discussed with Mr. Newland all of his options, including the benefits and detriments of entering a guilty plea and that has all been done before now and has been renewed since nine o'clock this morning.

*Trial Transcript, May 8, 2006*, at 10-11.

At sentencing, petitioner stated:

> As for trial, I didn't want to go to trial, but at the recommendation of my lawyer went to trial because he said that whatever the prosecutor offered, the time that I was

5

> looking at was still going to be the same.
>
> And I would have liked to have had a pre PSI prior to going to trial. If I would have known about it, I would like for the prosecutor to allow me to have one. That's something I just became aware of in the last three or four days.

*Sentencing Transcript, July 13, 2006*, at 14-15.[2]

### III. THE EVIDENTIARY HEARING

At the evidentiary hearing in this case, Attorney George Gary Tyack, testified that he was privately retained by petitioner. He had represented "thousands" of criminal defendants both before, and after, advent of the United States Sentencing Guidelines, and prior to his representation of petitioner in this case. *Id*. at 18. He had minimal discussions with petitioner regarding a guilty plea, because petitioner had no interest in pleading guilty. Petitioner was convinced that the government could not prove the charges against him. *Transcript, Evidentiary Hearing*, at 5.

> He felt that since no one would testify that had actually seen him throw a very large bag with some very large firearms out of the vehicle that he was using to flee from the Columbus police, that his possession of that bag could not be proved beyond a reasonable doubt.

*Id*. Because petitioner was convinced the government could not prove the charges against him, he had no interest in any guilty plea that would involve a significant term of incarceration. Any plea agreement would have required him to plead guilty to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c),

---

[2] Attorney Tyack testified at the evidentiary hearing in this case that petitioner's statement "was flat a lie." *Transcript, Evidentiary Hearing*, at 37.

which carried a mandatory five year term of incarceration consecutive to the sentence imposed on possession with intent to distribute marijuana. However, petitioner refused to discuss any plea that involved more than five years incarceration. *Id*. at 6. "Mr. Newland was utterly convinced he could not be convicted at trial, so he had no interest in that whatsoever." *Id*. at 7. Attorney Tyack did not engage in any specific discussions with petitioner regarding application of the United States Sentencing Guidelines, nor did he engage in any significant discussions with petitioner about the sentence he might face, aside from the statutory maximums, should he be found guilty after the trial, because it did not matter to petitioner. *Id*. at 8-9. He always discussed with his clients the potential ramifications of proceeding to trial, as opposed to entering a guilty plea; however, the discussion with Mr. Newland did not go far, because Mr. Newland would not seriously consider a guilty plea. *Id*.

> I think it's important for the client to know what they're facing within certain parameters.
>
> ***
>
> It didn't go very far with Mr. Newland because Mr. Newland is a man of very strong opinions. And his very strong opinion was that he would never have to worry about that because he could never be found guilty.
>
> Five years sounded like forever. It completely disrupted his relationships. It disrupted his business. It disrupted his life. And he was convinced he didn't need to consider those things.

*Id*. at 9; 19.

> His response [to a plea offer that required more than five years

7

incarceration] was a clear categorical denial of any interest whatsoever. He had boatloads of children he was supporting. He had a restaurant he was running. He had things like that, and he could not conceive of disrupting his world for that amount of time, especially where he was utterly convinced that the justice department could not prove that the guns in the blue bag were his or the marijuana in the trunk was his because he had thrown the guns in the bag out during his fleeing from police, and he didn't believe that anyone had seen him put anything in the trunk of the car.

Q. And he was adamant about that, correct?

A. Very.

*Id*. at 34.

Mr. Newland was ready to go to trial because he felt that the presumption of innocence would shield him from a conviction. So it wasn't going to be seriously considered. And he didn't communicate anything to me other than let's go beat this case.

*Id*. at 35; *see also id*. at 36.

If he had given me any indication whatsoever that he had a desire to seriously consider a plea resolution of this, I would have engaged in extensive discussions with Mr. Dominguez.... and tried to work through the best deal I felt we could get.

But there was absolutely no indication from this gentleman that he had any desire. And only after he's been found guilty and we've gone through the whole other thing, then – and I'll tell you, my reaction at the time [to petitioner's statement that he wanted to plead guilty] and now is that is just plain a lie.

*Id*. at 38. Attorney Tyack did not discuss the possibility of a plea under *North Carolina v.*

*Alford*, 400 U.S. 25, 31-32 (1970)[3] because he did not believe the judge would accept such a

---

[3] An *Alford* plea is a plea of guilt "accompanied by protestations of innocence," or made in the absence of the defendant's admission that he committed the crime

8

plea. *Id*. at 14-15. He advised petitioner that he might obtain reduction in his recommended sentence under the United States Sentencing Guidelines for acceptance of responsibility, even if he were to be found guilty after the trial.

> It was my feeling and my recollection that I communicated with him that acceptance of responsibility was not ruled out as a result of running a clean trial, but obviously it's easier to get acceptance of responsibility if you do a guilty plea.

*Id*. at 17. Under the United States Sentencing Guidelines Manual of 2004, applicable in this case, had petitioner entered a guilty plea to Counts One and Two of the Indictment (possession with intent to distribute marijuana, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(D), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(I)), which was the plea offered by the United States, and assuming he obtained a two level reduction in his recommended sentence for acceptance of responsibility,[4] he would have had a Base Offense Level of 8. *Id*. at 21-23. Assuming further that the District Judge reduced his Criminal History Category to Level III,[5] as he did at sentencing after trial, petitioner's recommended guideline sentence would have been six

---

charged against him. *Alford*, 400 U.S. at 31-32.

[4] Attorney Tyack was uncertain as to whether petitioner would have obtained a two level reduction in his recommended sentence under the United States Sentencing Guidelines even with a guilty plea; however, he would have advocated for it. *Transcript, Evidentiary Hearing,* at 23.

[5] The Court concluded that the PreSentence Investigation Report overstated the actual severity of petitioner's criminal history category, and granted petitioner's motion for a downward departure from the criminal history category. *Sentencing Transcript*, at 11.

to twelve months on Count One, plus the five year mandatory consecutive term on Count Two, for an aggregate recommended term of 66 to 72 months. *Id*. at 23-24; *Sentencing Table, United States Sentencing Commission Guidelines Manual, effective November 1, 2004.* Assuming the District Judge did not reduce petitioner's Criminal History Category from a Level IV to a Level III, petitioner's maximum recommended term under the United States Sentencing Guidelines would have been ten to sixteen months on Count One, plus the five year mandatory consecutive term on Count Two, for a recommended aggregate term of 70 to 76 months. *Id*. at 24. In short, had petitioner pursued a guilty plea agreement, he faced a recommended sentence of 66 to 76 months incarceration. *Transcript, Evidentiary Hearing,, at 25; Sentencing Table, United States Sentencing Guidelines.*[6] Instead, after proceeding to trial, petitioner had a Base Offense Level of 20, *PreSentence Investigation Report*, at 25; *Sentencing Transcript*, at 4. This level is the higher of the offense levels applicable to Counts One and Three, which were grouped together, and is derived from Count Three, the felonious possession count. Petitioner also had  a Criminal History Category of III, *Sentencing Transcript*, at 11-12, which produced a recommended guideline sentence of 41-51 months on Counts One and Three plus the five year mandatory consecutive term on Count Two for an aggregate  recommended sentence of 101 – 111 months incarceration. *See PreSentence*

---

[6] In the worst case scenario, assuming that the District Court neither credited petitioner a two level reduction for acceptance of responsibility, nor reduced his Criminal History Category from a Level IV to a Level II, his recommended sentence under the United States Sentencing Guidelines on a guilty plea to Counts One and Two of the Indictment would have been 75 to 81 months incarceration. *See Sentencing Table, United States Sentencing Guidelines Manual, effective November 1, 2004.*

*Investigation Report*. The Court imposed 48 month sentences on Counts One and Three, such sentences to run concurrently, plus the mandatory term on Count Two for an aggregate term of 108 months. *Id*. at 11; 25. Therefore, petitioner faced a significantly greater prison term by proceeding to trial in lieu of entering a guilty plea, primarily due to the impact that a conviction on Count Three would have on his guideline range. However, defense counsel never advised petitioner, prior to trial, of the potential sentencing ramifications of proceeding to trial on all three counts in lieu of entering a guilty plea to Counts One and Two:

> Q. Did you go through those calculations with this petitioner prior to him taking this matter to trial?
>
> A. No.

*Id.* at 24. Counsel did not, at any time, express in specific terms the difference between the likely sentence petitioner would get if he went to trial and was convicted on all three counts as versus his likely sentence from the result of a plea offer because he did not believe that such a conversation would have made any difference to petitioner. *Id*. at 45-46. "He was very sure of himself and the outcome and of the unacceptability of having a significant period of incarceration." *Id*. at 46.

> Q. Did you have discussions with this petitioner on your assessment of the quality of the prosecution's case?
>
> A. The assessment I gave him was that there were going to be some problems with it but that he could argue that he was fleeing just because he didn't want to go to jail, not because he had huge firearms and a large quantity of marijuana in the vehicle.

11

*Id*. at 40.  Defense counsel felt that the odds of winning at trial were "about 50/50."

> [B]efore somebody got on the witness stand from the division of police and claimed that they saw this blue bag at his feet before he took off, there was going to be a little problem, I felt, from the justice department being able to prove that the blue bag was ever in the vehicle.

*Id*. at 41.  Attorney Tyack denied ever telling petitioner that his sentence was not going to be any different whether he went to trial or whether he pleaded guilty.  *Id*. at 45.  "[T]hat just wouldn't be accurate, and I would not have said it to him."  *Id*. at 45.  "I would never and did never tell him that."  *Id*. at 48.  However, when asked whether he agreed that there would not have been a significant difference in petitioner's potential sentence if he had pleaded guilty, Attorney Tyack responded:

> I don't disagree.... Maybe it's just I've been doing this too long, but I do find that the outcomes of federal criminal cases sometimes are tied up with the judge who's involved.  And I've had a long history of judges looking at what they thought a fair outcome would be and getting there.
>
> I can't say ultimately, given Mr. Newland's record, that Judge Graham would not have gotten to the same place after a plea as he did with the proceedings as they progressed.
>
> ***
>
> Q.  Your assessment is plea or trial, he could have ended up the same way?
>
> A.  Trial generally you get a little bit more.  I would have indicated that.  But, again, anything over five years was utterly unacceptable to him, and it was going to be over five years either way.

*Id*.

Petitioner Newland testified that he met with Attorney Tyack three times prior to the date of trial.  Tyack advised petitioner that he had a pretty good chance of winning at trial – that the government's case was week and "it looked pretty good on my behalf."  *Id.* at 52.  Newland felt that his attorney encouraged him to take the case to trial.  Newland has six to eight prior criminal cases, and never took any of those cases to trial due to the "considerable difference in time" he would get if he went to trial.  *Id.* at 53.  According to petitioner, the only time at which he discussed the specifics of a guilty plea, Attorney Tyack advised him "that basically it wasn't a deal because I would get about the same amount of time, and I would still get acceptance of responsibility, and that everybody gets six months halfway house or home confinement."  *Id.* at 54.  He wanted "an Alford plea" but would have been willing to plead guilty.  *Id.*  Attorney Tyack never informed him prior to the first day of trial that the government was willing to drop Count Three if he pleaded guilty.  *Id.*, at 55.  Had he known the potential sentence after a trial, he would have considered the offer.  *Id.*  "When I asked Mr. Tyack what I would get if I got found guilty at trial, he said probably around five years or so."  *Id.* at 56.  According to Newland, counsel never went over the guidelines with him.  *Id.*  Had he known that he could have obtained a plea of guilty which would have had him at an advisory guideline range of between 66 to 72 months, he would have "immediately" accepted the offer.  *Id.* at 57.  Had he known that he would be sentenced to 108 or more months by going to trial, he would have pursued more forcefully a plea offer.  *Id.*

I didn't want to go to trial.  I don't know anyone who wants to

13

go to trial, especially with the federal government.

*Id.* at 58.

>Everyone in my community is aware that the federal government has a 97 percent conviction rate. They may not be familiar with the exact numbers, but they know they have a high conviction rate.
>
>Q. Did you know and did you believe that your case was a winner?
>
>A. Based upon what Mr. Tyack told me, yeah, I thought it was – a chance it would win. That's why I hired him for his legal advice. He is a professional.
>
>Q. Had you known what you know now, would you have taken this case to trial?
>
>A. Never. No.

*Id.* at 58.

>I only had two conversations with [Attorney Tyack] about a plea offer, one was the morning of trial and one was when I asked him about a plea offer and he said he needed to get with the government.

*Id.* at 72-73. He never understood that if he went to trial and got convicted, he might serve

twice as much time in prison as he would if he pleaded guilty. *Id.* at 73.

>Basically, he told me I was going to get the same thing pretty much, why not go to trial? If I go to trial, there is a chance of no jail time. If I take the plea and I get the same amount of time – I know I'm going to go to jail with a plea.

*Id.* at 74. He relied on the advice of his attorney. *Id.* at 74.

>I had no understanding about the time I was looking at. He never went over my criminal history category or base offense

14

> level. Pretty much he said I would still get acceptance of responsibility and things of that nature, it would be the same.

*Id.* at 74. He never "flat out" told Attorney Tyack that he would not accept any plea agreement if it involved serving five or six years in jail. *Id.* at 78.

## IV. ANALYSIS

The Court's analysis begins with this recitation of the applicable law:

> Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58, 106 S.Ct. 366, 88 L.Ed.2d 203. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir.2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir.1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Humphress v. United States,* 398 F.3d 855, 859 (6th Cir.2005). An attorney's failure to convey a plea offer satisfies the first prong of *Strickland. Griffin v. United States,* 330 F.3d 733, 737 (6th Cir.2003). Further, a substantial disparity between the plea offer and the potential sentence exposure constitutes

> strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer,

15

> despite earlier protestations of innocence. *See Magana v. Hofbauer*, 263 F.3d 542, 552-53 (6th Cir. 2001) (finding the difference between a ten- and twenty-year sentence significant); *United States v. Day*, 969 F.2d 39 (3d Cir.1992) (finding ineffective assistance of counsel when trial counsel mistakenly described the penalties at trial as ten years rather than the twenty-two years the defendant received at sentencing, and where a plea offer of five years had been made); *United States v. Gordon*, 156 F.3d 376, 377-81 (2d Cir.1998) (holding that the wide disparity between the ten-year sentence recommended by the plea agreement and the seventeen-and-a-half years the defendant did receive was objective evidence that a plea would have been accepted).

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir.2003); *see also Griffin v. United States, supra,* 33 F.3d at 739 (evidentiary hearing warranted to determine whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months.) An attorney's failure to insist that his client accept the government's plea offer due to overwhelming evidence of guilt, however, does not constitute constitutionally ineffective assistance. *Smith v. United States, supra*, 348 F.3d at 552.

> The decision to plead guilty-first, last, and always-rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.* The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage

as follows:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.*, at 553, citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992); *see also Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)(Failure of defense counsel to "provide professional guidance" regarding a defendant's sentencing exposure may constitute deficient assistance). An attorney's obligation to advise his client applies equally to the defendant who maintains his innocence of the charges, as other reasons may induce him to enter a guilty plea. *United States v. Williams*, 2009 WL 348805 (W.D. Tenn. Feb. 10, 2009), quoting *North Carolina v. Alford, supra*, 400 U.S. at 33.

> The Sixth Circuit has expressly declined to adopt a requirement that a convicted defendant establish by objective evidence that he would have pleaded guilty had his counsel competently advised him. [*Griffin v. United States*, 330 F.3d at 737)](citing *Dedvukivic v. Martin*, 36 Fed.Appx. 795, 798 (6th Cir. 2002(unpublished). Thus, a court may rely on a defendant's self serving testimony that he would have accepted the plea agreement had his counsel sufficiently advised him. *Id.*

*United States v. Williams, supra.*

Here, it is not disputed that Attorney Tyack did not review with petitioner the

potential sentencing ramifications of proceeding to trial, as opposed to pleading guilty,

specifically, his recommended sentence under the United States Sentencing Guidelines,

prior to trial.[7]   Attorney Tyack testified that he did not discuss these specifics with

petitioner because petitioner categorically denied "any interest whatsoever" in any plea

offer that involved more than five years incarceration.  *Transcript, Evidentiary Hearing*, at

33.  However, had petitioner pleaded guilty, he faced a recommended sentence of 66 –

72  months incarceration, as opposed to 101 – 111 months incarceration.  This disparity

is large enough to have made it mandatory, in order for counsel to have performed

effectively, to explain it to his client even if counsel believed his client was not

particularly interested in hearing about it.  An attorney has a duty to give his client all

the facts needed to make an informed decision about whether to plead guilty or go to

trial, and petitioner did not have those facts in this case.

The reason offered by Attorney Tyack (and the reason proffered by the United

States as to why petitioner was not prejudiced by this lack of information) is petitioner's

alleged refusal to consider any plea agreement that involved a sentence greater than

five years.  It is certainly true that, to obtain relief on an ineffective assistance of counsel

claim, a petitioner must show not only deficient performance on counsel's part, but also

prejudice.  Here, without knowing the difference in the likely sentence he faced if found

---

[7] Petitioner was sentenced on July 13, 2006, after the United States Supreme Court's January 12, 2005, decision in *United States v. Booker*, 543 U.S. 220, 259 (2005), excising as unconstitutional the provision requiring sentencing courts to impose a sentence within that recommended under the Untied States Sentencing Guidelines.

guilty after a trial, as opposed to if he accepted the government's plea offer, petitioner was not able to make an informed decision regarding whether to proceed to trial or enter a guilty plea.  Further, in view of the potential sentencing disparity he faced under the United States Sentencing Guidelines, this Court concludes that there is a reasonable probability that, had petitioner been so informed, he would (notwithstanding his protestations to the contrary) have chosen to enter a guilty plea.  He was deprived of the ability to make that choice because he was never told how different the sentences would be.

The Court recognizes that this result allows this particular petitioner to obtain the proverbial "second bite at the apple" - that is, he went to trial hoping that he would be acquitted, and, when that did not happen, he is now being given the opportunity to plead guilty to fewer charges and, perhaps, to receive a shorter sentence (although it still remains with the trial judge's discretion to deviate from the recommended sentence under the Sentencing Guidelines).   That is the required outcome in any case, however, where the petitioner did not have all of the information reasonably needed to make the decision to go to trial a knowing and intelligent one, and where the circumstances concerning the discrepancy in sentences undermine the Court's confidence that, had petitioner been fully advised, he would nonetheless have proceeded to trial and rejected the plea offered to him by the prosecuting attorney.   Although, in this case, the evidence is strong that petitioner remained convinced of his innocence (or, at least, that the prosecution would have a difficult time proving his guilt), as the Court of Appeals

19

noted in *Smith*, "[p]rotestations of innocence ... do not, by themselves, justify summary denial of relief" on this type of claim, but rather are only "a factor in the trial court's analysis ...."  *Smith*, 348 F.3d at 552.

Further, this is not a case like the one described in *White v. United States*, 313 Fed. Appx. 794, 798 (6th Cir. November 20, 2008), where a claim like the one advanced by petitioner here was rejected because "trial counsel explained the Sentencing Guidelines to [petitioner], discussed the potential impact of the plea on his sentence, and coordinated a meeting with [petitioner] and the Assistant U.S. Attorney to accept a plea."  After all that was done, the petitioner in *White* declined to meet with the prosecutor and elected to go to trial.  That sequence of events, had it occurred here, would have been fatal to petitioner's claim, but none of those things happened in this case.

To reduce the Court's holding to its essentials: the Court of Appeals has explicitly held that, in order to satisfy the requirements of the Sixth Amendment, counsel must review the Sentencing Guidelines with a defendant prior to trial, and explain in concrete terms the difference in the projected sentences that might be imposed after petitioner either accepted a plea offer or was convicted at trial. The failure to do so is not *per se* prejudicial, but if the discrepancy between the two sentences is sufficiently large, prejudice - i.e. the reasonable likelihood of a different outcome in the proceedings - can  be inferred.  That inference can be negated by evidence that, even if he or she had been fully advised of the consequences of doing so, the defendant

would still have rejected a plea offer and elected to go to trial.  The Court does not doubt Attorney Tyack's testimony to the effect that petitioner stated on more than one occasion that he was "not interested" in a plea deal which would result in his serving more than five years in prison.  That lack of interest, however, was expressed in the context of petitioner's lack of awareness that by going to trial on all three counts instead of pleading guilty to two, he risked serving a sentence almost twice as long.  Further, the Court takes into account Attorney Tyack's subjective belief, which was likely expressed to petitioner at least indirectly, that, guilty plea or not, the sentencing judge would "get to the right result" and that the sentences under either scenario might not be materially different.  The Court's conclusion that the information about the discrepancy in guideline sentences - information to which petitioner was constitutionally entitled - might have changed petitioner's mind about going to trial is buttressed by his statements at the sentencing hearing that, as soon as he saw the guideline calculations in the PreSentence Investigation Report, he believed he had not made an informed choice about going to trial.  That statement was made even before sentence was imposed, and petitioner has maintained that position consistently since that time.  For all of these reasons, and based on the legal analysis set forth above, the Court finds that petitioner is entitled to relief on his ineffective assistance of counsel claim.

## V.  RECOMMENDATION

Therefore, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED**, that petitioner's sentence be **VACATED**, and that

petitioner be offered the opportunity, within thirty (30) days, to plead guilty to Counts One and Two of the Indictment as originally offered by the United States. If he fails to do so, this action should be dismissed.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp

22

United States Magistrate Judge